IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STANLEY KOLBE, individually and on
behalf of all other persons similarly situated,

      Plaintiff,

      v.

BAC HOME LOANS SERVICING, L.P., and
BALBOA INSURANCE COMPANY,

      Defendants.

Civil Action No. 11-10312-NMG

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This is a straightforward contract case. Plaintiff Stanley Kolbe ("Plaintiff" or "Kolbe") is the mortgagor on a mortgage loan serviced by Defendant BAC Home Loans Servicing, LP ("BHLS"). Kolbe's mortgage – the contract at issue – requires he maintain flood insurance, "in the amounts and for the periods" required by his lender. In late 2009, BHLS sent Kolbe a letter informing him his existing flood insurance coverage was less than what BHLS required, and requested he purchase additional insurance so that his flood insurance coverage would be the same as his homeowner's insurance coverage. Kolbe contends that BHLS breached the mortgage, because under the terms of his mortgage he could not be required to obtain the additional insurance. Kolbe now brings suit against BHLS and another party, Balboa Insurance Company ("Balboa") (collectively, BHLS and Balboa are "Defendants") – the insurance company that allegedly sent the letters on BHLS's behalf – for breach of contract and breach of the implied covenant of good faith and fair dealing. Kolbe's claims fail as a matter of law and should be dismissed.

The plain language of the mortgage gives BHLS the discretion to determine the amount

of flood insurance Kolbe must maintain. He must maintain flood insurance coverage "in the amounts and for the periods" BHLS requires. The mortgage also sets a floor to BHLS' discretion, requiring Kolbe to maintain flood insurance coverage **at least** in the amounts required by the National Flood Insurance Act ("NFIA"). Plaintiff ignores the discretion that the mortgage expressly provides to BHLS, obscuring it with an interpretation of the NFIA that, if accepted, would turn the NFIA's **minimum** insurance requirements into a **maximum**. Plaintiff cannot escape the plain meaning of his mortgage's terms, however, and his claims must be dismissed with prejudice.

Plaintiff's claims against Balboa must be dismissed with prejudice for the additional reason that Balboa is not a party to the contract at issue in this case, and there is no basis in the law for holding Balboa liable for the conduct of which Plaintiff complains.

## FACTUAL BACKGROUND AND ALLEGATIONS

### I. Plaintiff's Allegations.[1]

Kolbe obtained a mortgage loan in the amount of $197,437 on October 6, 2008. Compl. ¶ 17. The property securing Kolbe's mortgage loan is located in an area designated as a special flood hazard area under the NFIA, therefore requiring flood insurance under the federal statute. *Id.* ¶ 23. Kolbe obtained flood insurance in an unspecified amount at the time he obtained the mortgage. *Id.* ¶ 26. BHLS services Kolbe's loan. Compl. ¶¶ 19-20.

With respect to the amount of flood insurance required, Kolbe's mortgage states:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, *against any hazards*, casualties, and contingencies, including fire, for which Lender requires insurance. ***This insurance shall be maintained in the amounts and for the period that Lender requires***. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the

---

[1] These factual allegations, taken from Plaintiff's Complaint, are intended only to aid in the Court's resolution of this motion, and Defendants do not admit them by including them here.

> Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

Compl., Exh. 1 at 4, ¶ 4 (emphasis added).[2]

On October 18, 2009, BHLS allegedly sent Kolbe a letter informing him that he was required to increase his flood coverage by $46,000 so that it would match the amount of his homeowner's coverage.  *Id.* ¶ 27; *see also* Compl. Exh. 3.  That letter also allegedly stated that unless Kolbe sent verification of acceptable flood insurance coverage by December 6, 2009, BHLS would purchase it for him and charge the cost of the additional insurance, which was estimated at $237.19, to Kolbe.  *Id.*  On November 16, 2009, BHLS allegedly sent Kolbe a follow-up letter that again stated that the flood insurance coverage on Kolbe's property was inadequate, and that he would need to purchase additional flood insurance coverage in the amount of $46,000 or BHLS would purchase it for him.  *Id.* ¶ 28.  Kolbe alleges that although both letters were on BHLS's letterhead, the letters were prepared and sent by Balboa.  *Id.* ¶ 29.

Kolbe claims he purchased an additional $46,000 of flood insurance coverage after receiving the October 18 and November 16 letters.  *Id.* ¶ 31.

## II.     **The National Flood Insurance Act**.

The NFIA, while not controlling here, is worthwhile to review as it establishes a **minimum** flood insurance coverage requirement incorporated in the Plaintiff's mortgage – and provides useful background to the language used in the mortgage.

In 1968, Congress enacted the NFIA in response to "an increasing burden on the Nation's resources" from the personal hardships and economic distress suffered by homeowners as a result of flooding from sources such as Hurricane Betsy, which flooded New Orleans in 1965.

---

[2] This court may properly consider Plaintiff's mortgage without converting this motion to dismiss into one for summary judgment, as it is both attached to the Complaint and integral to the allegations contained therein.  *See Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 195 n.2 (1st Cir. 2001).

42 U.S.C. § 4001(a); *see also* H.R. Rep. No. 90-1585, 1968 U.S.C.C.A.N. 2873, 2966-67 (June 25, 1968) (noting a flood insurance program was needed because communities "become completely immobilized following a major flood" and existing disaster relief was "inadequate to provide for the necessary restoration of heavily damaged areas").

Most notably, the NFIA prohibits a federally-regulated lending institution such as Bank of America, N.A. from making, increasing, extending, or renewing

> any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified . . . as an area having special flood hazards . . . unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount *at least* equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the [NFIA] with respect to the particular type of property, whichever is less.

42 U.S.C. § 4012a(b)(1) (emphasis added). A lender that extends credit for a property located in a special flood hazard area without requiring the purchase of mandatory flood insurance is subject to civil penalties under the NFIA, as is a lender that fails to provide notice of insufficient coverage or to purchase insurance when the borrower does not. *Id.* § 4012a(f).

The NFIA requires that flood insurance coverage for a single-family home securing a mortgage loan (which is the type of dwelling that secured Kolbe's property) be "in an amount *at least* equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less." 42 U.S.C. § 4012a(b)(1) (emphasis added). The maximum coverage that a lender may require for a single-family home is $250,000. 42 U.S.C. § 4013(b)(2) and 44 C.F.R. § 61.6.

**ARGUMENT**

I. **Kolbe's Claims Must Be Dismissed Because Kolbe's Mortgage Permitted BHLS to Require Additional Flood Insurance.**

Both Count I of Kolbe's Complaint, which purports to state a claim for breach of contract, and Count II, which purports to state a claim for breach of the implied covenant of good faith and fair dealing, rise or fall on Kolbe's reading of his mortgage. Kolbe claims the mortgage only required him " to maintain flood insurance coverage for the Property in an amount equal to **the lesser of** the outstanding balance on the Loan . . . or the $250,000 maximum flood insurance available under the [NFIA]." Compl. ¶ 25 (emphasis added). In other words, Kolbe reads his mortgage as **preventing** BHLS from requiring flood insurance in excess of the outstanding loan balance. The plain language of Kolbe's contract, however, demonstrates the contrary.

    A. *The Mortgage Permits BHLS to Require Flood Insurance "in the amounts and for the periods" it Determines.*

Kolbe's mortgage expressly permits BHLS to determine the amount of flood insurance coverage required on the property. Under the mortgage, the borrower – Kolbe – is required to "insure all improvements on the Property . . . against *any hazards, casualties, and contingencies*, including fire, for which Lender requires insurance . . . *in the amounts and for the periods that Lender requires*." *See* Compl., Exh. 1 at 4, ¶ 4 (emphasis added). The mortgage does not limit this discretion to certain types of hazards. Rather it applies, by its clear terms to *any hazards* – which includes floods.

"Where the terms of the contract are clear and unambiguous, the court must enforce the contract as it is written." *Simonetti v. Selective Ins. Co.*, 372 N.J. Super. 421, 428, 859 A.2d 694, 698 (2004). According to the plain language of Plaintiff's mortgage, Defendants have the right to choose the amount of flood insurance on the property, within the limits set by the NFIA. This is precisely what happened here.

5

### B. *The Mortgage Does Not Establish the Maximum Amount of Flood Insurance Coverage as Equal to the Outstanding Principal Balance of Plaintiff's Loan.*

Plaintiff, in an effort to escape this clear language, instead relies upon the sentence in paragraph 4 that reads, "Borrower shall also insure all improvements on the Property . . . against loss by floods to the extent required by the Secretary." *See* Compl. ¶ 22; *see also* Compl., Exh. 1 at 4, ¶ 4. "The Secretary" refers to the Secretary of Housing and Urban Development ("HUD"). *See* Compl., Exh. 1 at 3, ¶ 2. According to Plaintiff, "the extent [of flood insurance] required by the Secretary" is the outstanding principal balance of his loan – no more and no less.

There are two errors in Plaintiff's argument, which require that the argument be rejected as a matter of law. First, plaintiff's argument requires that the term "any hazard" in the preceding sentence be read not to apply to floods. Such a reading of the mortgage is wrong because it is at odds with the ordinary meaning of "hazard" – "a potential risk or danger" – which, unquestionably encompasses flooding. *Cf.* Merriam-Webster's Collegiate Dictionary 572 (11th ed. 2003) (defining "hazard" as "a source of danger" or "a chance event; accident").[3]

This is the conclusion reached by the court in *Custer v. Homeside Lending, Inc.*, 858 So.2d 233 (Ala. 2003). In that case, plaintiffs' mortgage required them to insure the property "against loss by fire and other **hazards, casualties, and contingencies** in such amounts and for such periods as may be required by the Mortgagee" – language remarkably similar to the language of Plaintiff's mortgage. *See id.* at 237 (emphasis added). While the *Custer* plaintiffs' original lender did not require any flood insurance, after the defendant purchased the loan it informed plaintiffs that they would be required to purchase flood insurance for the property, and when plaintiffs failed to do so, purchased it for them and charged them for the coverage. *Id.* at

---

[3] Floods may also be considered casualties or contingencies. *See* Merriam-Webster's Collegiate Dictionary 193 (11th ed. 2003) (defining "casualty" as a "serious or fatal accident: disaster"); *id*. at 270 (defining "contingency" as "an event (as an emergency) that may be or is not certain to occur").

6

237-40.  There, as here, the plaintiffs alleged that the defendant "breached the mortgage agreement . . . by force-placing flood insurance in amounts that exceeded outstanding mortgage loan balances."  *Id.* at 240.  The court rejected that argument, concluding "contractually, [the defendant] was given the right to force-place a higher amount, under the provisions of the mortgage authorizing it to force-place insurance against loss 'in such amounts' as it might choose to require."  *Id.* at 246-47.

The second error in plaintiff's argument is that his reading of HUD's flood insurance regulations, found at 22 C.F.R. § 203.16a, ignores the plain language of those regulations as well.  The regulations merely provide that "flood insurance must be maintained . . . in an amount *at least equal to* either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, whichever is less."  22 C.F.R. § 203.16a(c) (emphasis added).  Thus, the regulation – and Kolbe's mortgage – establishes a *minimum* amount of flood insurance required.  Plaintiff's interpretation would turn the regulation on its head, transforming this minimum requirement into the maximum of what a lender may require.  The statute, however, separately establishes a maximum flood insurance limit of $250,000 for single-family residences.  42 U.S.C. § 4013(b)(2) and 44 C.F.R. § 61.6.

In short, the two insurance clauses of Kolbe's mortgage admit of only one reasonable interpretation, and are easily harmonized.  The first sentence gives BHLS discretion to set the borrower's insurance coverage at "*the amounts and for the periods that Lender requires*."  The second sentence incorporates the requirements of the NFIA by setting a **floor** for flood insurance.  Plaintiff's effort to read this second sentence as **prohibiting** the lender from requiring more than the NFIA minimum would read the second sentence to **directly contradict** the prior

7

sentence, and thereby to prevent the lender from requiring coverage in amounts – for example, replacement value – that might better protect the borrower's interest in the property. Such a construction has nothing to commend it as a matter of reason or policy. BHLS accordingly acted within its clear contractual rights by requiring Kolbe to purchase the additional insurance, and Plaintiff's claims therefore fail.

## II.    Kolbe Has Failed to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed for the same reasons set forth above and because Plaintiff fails to allege Defendants denied Kolbe the "benefit of the bargain" originally intended by the parties.

Under New Jersey law, "[t]he covenant [of good faith and fair dealing] is to be interpreted narrowly." *Cargill Global Trading v. Applied Development Co.*, 706 F.Supp.2d 563, 580 (D.N.J. 2010) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 231, 864 A.2d 387 (2005)). "[I]if a defendant acts in accordance with an express contractual term, he cannot be liable for breach of the implied covenant." *Id.*

BHLS merely exercised the discretion expressly granted it by the terms of Plaintiff's mortgage agreement, and as such cannot have breached the implied covenant of good faith and fair dealing. But even assuming BHLS had not acted in accordance with the contract, to succeed on this claim a plaintiff must demonstrate that the defendant "engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* at 580 (quoting Williston on Contracts § 63:22 at 513-14). Here, Plaintiff's Complaint fails to make any allegations that BHLS in any way denied Plaintiff "the benefit of the bargain."

Rather, what BHLS **in fact** did was to require insurance in the same amount as Plaintiff's homeowners insurance – that is, an amount equal to the replacement cost of Plaintiff's home.

8

This was hardly "bad faith"; rather, by doing so BHLS made sure that Plaintiff had the appropriate protection in the event of a catastrophic flood. This is because flood insurance that covers only the amount of the outstanding loan balance provides no funds for a borrower to rebuild and often leaves insufficient funds such that **both** borrower and lender are harmed. Indeed the Federal Emergency Management Agency ("FEMA") policy is that flood insurance equal to the full replacement value of the property should be maintained. *See* Federal Emergency Management Agency, *National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines* 27-28 (September 2007), available at http://www.fema.gov/ library/ viewRecord.do?id= 2954 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value (RCV)]. . . . By insuring buildings to the full RCV, the lender and borrower are both better protected."); *cf. Custer*, 858 So.2d at 247-48 (lender did not abuse discretion in force-placing flood insurance sufficient to protect borrower's insurable interest in property).

For these reasons, and for the reasons set forth in Section I above, this Court should dismiss Count II with prejudice.

### III. Plaintiff's Claims Against Balboa Must Be Dismissed Because Balboa Is Not a Party to the Contract.

Even if the plain language of Plaintiff's mortgage did not conclusively determine the fate of his claims against BHLS, his claims against Balboa would still need to be dismissed for a separate, independent reason. Balboa simply is not a party to the contract at issue in this case. Plaintiff himself recognizes this, alleging only that Balboa is an agent and affiliate of BHLS. Compl. ¶¶ 2, 21. Plaintiff further admits that the letters of which he complains were on BHLS's letterhead, not Balboa's, and that Balboa's involvement was limited to allegedly preparing and sending those letters. *Id.* ¶ 29.

If Balboa was acting as an agent on behalf of the counterparty to Plaintiff's mortgage, that alone cannot create liability on Balboa's behalf for the alleged breach of that contract. Under New Jersey law, "[i]t is a well-established principle . . . that an agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *United States Land Res., L.P. v. JDI Realty LLC*, No. 08-CV-5162, 2010 WL 3218417, *6 (D.N.J. Aug. 12, 2010) (quoting *Home Buyers Warranty v. Roblyn Devel. Corp.*, Civ. No. MER-L-464-05, 2006 WL 2190742, *4 (N.J. Super. App. Div. 2006)).

The Complaint is devoid of any allegations of such an intention on Balboa's part. The fact that Plaintiff may generally allege that Balboa "acted on its own behalf," *see* Compl. ¶ 21, is of no consequence – "such are bald assertions that the Court need not . . . credit." *JDI Realty*, 2010 WL 3218417, at *6. Because the Complaint does not allege that Balboa, in taking the actions Plaintiffs allege, was doing anything other than acting as an agent for another principal, the claims against Balboa must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants BAC Home Loans Servicing, L.P. and Balboa Insurance Company respectfully request that the Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted, and grant such other relief as it deems just and equitable.

Dated: April 25, 2011

Respectfully submitted,

BAC HOME LOANS SERVICING, LP and
BALBOA INSURANCE COMPANY,

By their attorneys,

/s/ John C. Englander
John C. Englander (BBO # 542532)
Matthew G. Lindenbaum (BBO # 670007)
Mark T. Knights (BBO # 670991)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
mlindenbaum@goodwinprocter.com
mknights@goodwinprocter.com

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document, filed through the ECF system, will be electronically sent to those indicated on the Notice of Electronic Filing as registered participants, and hard copies will be sent to those indicated as non-registered participants, on April 25, 2011.

                                        /s/ John C. Englander