United States District Court
District of Massachusetts

```
_____
                               )
STANLEY KOLBE, individually and )
on behalf of all other persons  )
similarly situated,             )
          Plaintiff,            )    Civil Action No.
                                )    11-10312-NMG
          v.                    )
                                )
BAC HOME LOANS SERVICING, L.P.  )
and BALBOA INSURANCE COMPANY,   )
          Defendants.           )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This is a putative class action lawsuit brought by plaintiff Stanley Kolbe against Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BAC") and Balboa Insurance Company ("Balboa") for breach of his mortgage contract and breach of the implied covenant of good faith and fair dealing.[1]  Kolbe alleges that defendants breached his mortgage contract by requiring him to purchase more flood insurance than was required under the terms of his mortgage (referred to as "force-placed insurance").  BAC services Kolbe's loan and Balboa, a wholly-owned subsidiary of Bank of America Corporation, is an insurance company that allegedly contacted Kolbe on BAC's behalf.  Before the Court is defendants' motion to dismiss.

---

[1] BAC Home Loans Servicing, LP has recently been merged into Bank of America, N.A..

I.  **Background**

On October 6, 2008, Kolbe obtained a loan for $197,437 secured by a mortgage on his home, which is located in an area in Atlantic City, New Jersey that is designated as a flood hazard area under the National Flood Insurance Act, 42 U.S.C. §§ 4001-4129 ("NFIA").  The NFIA prohibits federally-regulated lenders from making, increasing, extending or renewing any loan secured by real estate in a flood hazard area in which flood insurance is available unless the property is covered by flood insurance.  42 U.S.C. §§ 4012a(b)(1).  If the lender is found to have a pattern or practice of non-compliance, it is subject to civil penalties. Id. § 4012a(f).

Kolbe obtained flood insurance in an unspecified amount greater than the outstanding balance of his loan.  On October 18, 2009, however, and again on November 16, 2009, BAC allegedly sent Kolbe a letter informing him that 1) he was required to increase his flood insurance by $46,000 in order to match the amount of his homeowner's insurance coverage and 2) if he did not comply by December 6, 2009, the insurance would be purchased for him and he would be charged an estimated $237.  In response, Kolbe purchased an additional $46,000 in flood insurance coverage.  He alleges that the increased insurance requirement breached his mortgage contract and that defendants acted in bad faith.

II.  **Procedural History**

Kolbe filed his complaint on behalf of a putative class on February 23, 2011.  Defendants thereafter filed a motion to dismiss on April 23, 2011 which plaintiff opposed.  On May 24, 2011, the Court allowed Kolbe's motion to consolidate the case with related cases <u>Berger</u> v. <u>Bank of America, et al</u> (No. 10-cv-11583) and <u>Lass</u> v. <u>Bank of America, et al.</u> (No. 11-cv-10570).  At a motion hearing on June 8, 2011, however, <u>Lass</u> was severed but the plaintiffs in the separate actions agreed to conduct joint discovery.

III. **Motion to Dismiss**

A.  **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  <u>Nollet</u> v. <u>Justices of the Trial Court of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>Langadinos</u> v.

-3-

<u>Am. Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  See <u>Nollet</u>, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions.  <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action.  <u>Id.</u>  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  <u>Id.</u> at 1950.

**B.   Breach of Contract**

The contract at issue is Kolbe's mortgage, which states, in Paragraph 4:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against <u>any hazards</u>, casualties, and contingencies, including fire, <u>for which Lender requires insurance</u>.  This insurance shall be maintained <u>in the amounts and for the period that Lender requires</u>.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, <u>against loss by floods to the extent required by the Secretary</u>.

(emphasis added).

The parties do not dispute that "Secretary" in the third quoted sentence refers to the Secretary of Housing and Urban

-4-

Development.  The amount of flood insurance "required by the Secretary" for property located in an area designated as an area having special flood hazards is defined as:

> an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less.

42 U.S.C. §§ 4012a(b)(1).  The maximum limit of coverage available under the NFIA for a single-family home is $250,000. Id. § 4013(b)(2) and 44 C.F.R. § 61.6.

## 1.   The Parties' Positions

Kolbe contends that the phrase "any hazard" in the first sentence of the subject policy provision quoted above does not apply to floods and, thus, BAC does not have the discretion to dictate the amount of flood insurance coverage he must obtain. He asserts that the mortgage requires him to maintain flood insurance coverage for his property in an amount equal to either the outstanding balance on the loan or the $250,000 maximum flood insurance available under the NFIA, whichever was less, because that is the amount "required by the Secretary".  He maintains that the third sentence is independent and mutually exclusive from the first two and, therefore, it is he, not BAC, who has the discretion to determine the amount of flood insurance to carry within the confines of the NFIA.  Because the outstanding balance of Kolbe's loan was less than $250,000, he based his decision with respect to insurance coverage on the outstanding balance.

In contrast, defendants contend that the proper interpretation of Kolbe's mortgage is that 1) the first and second sentences of the subject policy provisions give BAC discretion to determine the required amount of his flood insurance coverage and 2) the third sentence incorporates the requirements of the NFIA by setting a floor for the amount of flood insurance.

### 2.   Analysis

Kolbe asserts the following arguments in support his understanding of his mortgage contract:

1)  If flood insurance was addressed in the "all hazards" sentence, then the third sentence of the policy provision would be rendered superfluous; a result which is to be avoided when interpreting a contract.  See Matter of Liquidation of Integrity Ins. Co., 657 A.2d 902, 909 (N.J. Super. Ct. App. Div. 1995) ("The contract is to be considered as a whole, and its provisions are to be read together."); Eprotec Pres., Inc. v. Engineered Materials, Inc., Civ. A. No. 10-5097, 2011 WL 867542, at *5 (D.N.J. Mar. 9, 2011) ("Plaintiff cannot simply wish away individual sentences of the arbitration clause because they are inconvenient, particularly if by doing so they render the clause meaningless." (citations omitted)).

2)  When a clause uses the word "also", that clause denotes a separate and additional provision.  See Dean v. Griffin Crane &

-6-

Steel, Inc., 935 So. 2d 186, 192-93 (La. Ct. App. 2006) ("The indemnity obligation set forth in that sentence was obviously a separate obligation from the unconditional indemnity . . . in the following sentence, given the use of the adverb "also" in the latter sentence"); Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of New York, 727 N.E.2d 563, 566-67 (N.Y. 2000) ("It uses the word 'also,' indicating that what follows is a separate, additional provision, not merely a reiteration of what came before.").

3) A specific provision, such as the third sentence, trumps a more general provision contained in the first sentence.  See Homesite Ins. Co. v. Hindman, 992 A.2d 804, 808 (N.J. Super. Ct. App. Div. 2010).

4) In Wulf v. Bank of America, N.A. & BAC Home Loans Servicing, L.P., the plaintiff's mortgage contained identical language to the flood insurance provision at issue here.  No. 10-cv-5176, 2011 WL 2550853 (E.D. Pa. Apr. 15, 2011), adopted by Wulf v. Bank of America, N.A. & BAC Home Loans Servicing, L.P., No. 10-cv-5176, 2011 WL 2550628 (E.D. Pa. June 27, 2011).  In a Report and Recommendation which was subsequently adopted, the Magistrate Judge concluded that the provisions relating to flood insurance were ambiguous and, as such, dismissal was inappropriate.

5) In interpreting a written agreement, ambiguities are

construed against the party who drafted the agreement.  <u>Daburlos</u>
v. <u>Commercial Ins. Co. of Newark</u>, 521 F.2d 18, 26 (3d Cir. 1975);
<u>City of Orange Tp.</u> v. <u>Empire Mortg. Servs., Inc.</u>, 775 A.2d 174,
181 (N.J. Super. Ct. App. Div. 2001).  Moreover, in considering a
motion to dismiss, the Court must make all inferences in the
plaintiff's favor and, if a contract is ambiguous, the motion to
dismiss must be denied.  <u>Aware, Inc.</u> v. <u>Centillium Commc'ns,</u>
<u>Inc.</u>, 604 F. Supp. 2d 306, 310 (D. Mass. 2009).

Despite those arguments, the Court agrees with defendants
that the phrase "any hazard" in the first sentence encompasses
flooding and, as such, the first and second sentences of the
subject policy provision give BAC discretion to determine the
amount of flood insurance coverage Kolbe must maintain within the
parameters set by the NFIA.  The Court concurs with the Alabama
Supreme Court's interpretation in <u>Custer</u> v. <u>Homeside Lending,</u>
<u>Inc.</u>, that "hazards" includes floods.  858 So. 2d 233, 237, 247
(Ala. 2003).  In that case, the mortgage stated that the
mortgagor would keep the secured property

> insured as may be required from time to time by the
> Mortgagee against loss by fire and other hazards,
> casualties and contingencies in such amounts and for such
> periods as may be required by the Mortgagee[.]

<u>Id.</u> at 237.  The court concluded that the mortgage gave the
lender the right to require a higher amount of flood insurance
than the outstanding mortgage balance.  <u>Id.</u>

The Court also concludes that the three relevant sentences are not ambiguous and do not create a conflict.  The first two sentences afford the insurer discretion to determine the amount of hazard insurance that the mortgagor must maintain.  The third sentence merely specifies the required minimum coverage for flood insurance.  See, e.g., Hayes v. Wells Fargo Home Mortg., Civ. A. No. 06-1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006) (The NFIA establishes "a minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding.").  The specific only trumps the general when the two are clearly in conflict and, here, the policy provisions can and should be read together logically without conflict.  Burley v. Prudential Ins. Co. of Am., 598 A.2d 936, 940 (N.J. Super. Ct. App. Div. 1991).

The Court finds that plaintiff's proposed interpretation of his mortgage is unreasonable and that the mortgage contract, especially in light of the NFIA language, is eminently clear. Thus, the contract is not ambiguous.  See Hayes, 2006 WL 3193743, at *3 ("Only if the language can **reasonably** be read to have more than one **reasonable** meaning can the language be said to be ambiguous." (emphasis in original)).

The Court's interpretation is bolstered by an examination of the purpose for which the NFIA was enacted, which was, inter

-9-

<u>alia</u>, to ease the burden on the federal government of flood disaster relief by providing private insurance money for rebuilding damaged areas.  42 U.S.C. § 4001(a); <u>C.E.R. 1988, Inc.</u> v. <u>Aetna Cas. & Sur. Co.</u>, 386 F.3d 263 (3d Cir. 2004) ("The Program was intended to minimize costs to taxpayers by limiting the damage caused by flood disasters through prevention and protective measures." (internal quotation omitted)); <u>United States</u> v. <u>St. Bernard Parish</u>, 756 F.2d 1116, 1122 (5th Cir. 1985) ("the principal purpose in enacting the NFIA was to reduce through the implementation of adequate land use controls and the availability of subsidized flood insurance, the massive and ever increasing burden of federal flood disaster assistance.").

Upon enacting the NFIA, the House of Representatives issued a report explaining the purpose of the new statute and its concerns:

> Communities along the seacoast or in a river basin become completely immobilized following a major flood.  Usually they must depend on the Federal Government and voluntary relief agencies to provide various forms of assistance.  Some State and local governments have limited programs to assist a flood-stricken area, but disaster relief from all of these sources is inadequate to provide for the necessary restoration of heavily damaged areas.  These facts underline the need for a program which will make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and reduce the mounting Federal expenditures for disaster relief assistance.

<u>Mid-Am. Nat. Bank of Chi.</u> v. <u>First Sav. & Loan Ass'n of South Holland,</u> 737 F.2d 638, 643 n.9 (7th Cir. 1984) (quoting H.R. Rep.

No. 1585, 90th Cong., 2d Sess., reprinted in [1968] U.S. Code Cong. & Ad. News 2873, 2966-2967).

The Court's interpretation and defendants' conduct is also in accordance with the holding in Custer, in which the Supreme Court of Alabama concluded that 1) the NFIA establishes a minimum of required flood insurance and 2) to require insurance coverage equal to the full replacement value of the property was not unreasonable.  858 So.2d at 244-45 ("Congress would not be adverse to the contractual procurement of force-placed insurance covering the full value of the property.").[2]  The phrase "at least" in § 4012(b) of the NFIA means that the statute establishes a minimum amount of flood insurance that borrowers must obtain.  Id. at 245-46.

The Court concludes that it was, therefore, reasonable for BAC to require flood insurance in an amount exceeding the outstanding balance of plaintiff's loan and equal to the full replacement value of the property.  See id. at 247.  The mortgage provision also gives the lender the right to change the amount of required insurance as it deems necessary by stating that

_____

[2] In contrast, the case cited by plaintiff, Hofstetter v. Chase Home Fin., LLC, 751 F. Supp. 2d 1116, 1120-21 (N.D. Cal. 2010), is inapposite because the court did not consider whether language similar to the language in Kolbe's mortgage gave the mortgagee the right to increase its flood insurance requirement beyond that required at closing.  The issue was whether the mortgagee had the right to add a flood insurance requirement to the mortgage agreement after closing.

insurance must be maintained "in the amounts and for the period that Lender requires".  As a result, there is no evidence of breach of contract here and defendants' motion to dismiss will be allowed.

**C.    Breach of the Covenant of Good Faith and Fair Dealing**

A covenant of good faith and fair dealing is implied in every contract in New Jersey.  <u>Sons of Thunder, Inc.</u> v. <u>Borden, Inc.</u>, 690 A.2d 575, 587 (N.J. 1997).  In order to prove breach of the covenant of good faith and fair dealing, plaintiff must show that defendant has acted with a bad faith motive or intention.  <u>Cargill Global Trading</u> v. <u>Applied Dev. Co.</u>, 706 F. Supp. 2d 563, 580 (D.N.J. 2010).

Defendants argue that there is no evidence that they acted in bad faith because BAC's insurance requirement was based on the Federal Emergency Management Agency ("FEMA") policy that homeowners should maintain flood insurance equal to the full replacement value of the property.  The Court concurs and concludes that requiring insurance coverage equal to the full replacement value of the property was not unreasonable.  <u>See</u> <u>Custer</u>, 858 So.2d at 244.  Thus, plaintiffs' claim for breach of the covenant of good faith and fair dealing will be dismissed.

**D.    Balboa**

Because the Court finds that plaintiff has failed to state a claim upon which relief can be granted, the question of whether Balboa is properly a defendant is moot.

**ORDER**

In accordance with the foregoing, defendants' motion to dismiss (Docket No. 11) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 18, 2011